# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

BOSE CORPORATION,

Plaintiff,

vs.

SHENZHEN HONGYINYUE TECHNOLOGY CO., LTD. (D/B/A DBSONO),

Defendant.

Civil Action No. 1:26-cv-14234

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Bose Corporation ("Plaintiff" or "Bose"), by and through its undersigned counsel, brings this Complaint against Shenzhen Hongyinyue Technology Co., Ltd. (d/b/a DBsono), ("Defendant" or "DBsono"), and in support thereof alleges as follows:

## INTRODUCTION

1. Founded in 1964, Bose has earned a reputation as one of the world's most recognized and respected audio companies. Over the course of six decades, Bose has consistently distinguished itself through research-driven innovation and a commitment to developing products that change the way consumers experience sound. From pioneering home speaker systems and premium automotive audio systems to industry-defining noise-cancelling headphones, earbuds, and portable speakers, Bose's products have become iconic in the marketplace and are closely associated by consumers with distinctive design, superior performance, and enduring goodwill.

2. Bose has devoted substantial resources to protecting the innovation and distinctive designs embodied in its products. Bose has pursued and obtained extensive patent protection covering its audio technologies, product configurations, and ornamental designs, reflecting the

company's significant investment in research, development, engineering, and aesthetic design. Bose's products are immediately recognizable to consumers, with design features that are not merely functional but serve as powerful indicators of source, quality, and reputation. Bose's iconic product designs—including its portable speakers, headphones, earbuds, home audio systems, and other audio products—are valuable intellectual property assets that Bose vigorously protects against unauthorized copying, imitation, and infringement.

3. Bose's SoundLink product line is a family of portable wireless speaker products, developed to deliver Bose-quality sound in compact, durable, and easily transportable form factors for use at home and on the go. Bose introduced the SoundLink Wireless Mobile Speaker in 2011, which marked Bose's entry into the portable Bluetooth speaker market and was promoted as a high-quality mobile speaker for taking sound anywhere. Since then, Bose has continued to build the SoundLink line through successive generations and models, each reflecting Bose's ongoing investment in portable audio engineering, distinctive industrial design, and consumer-recognized product styling.

| **Bose SoundLink Flex** | **Bose SoundLink Max** |
|---|---|
|  |  |

4. Bose's SoundLink Flex (shown above on the left) was introduced in 2021 as a rugged, compact, portable speaker featuring a distinctive premium form factor and integrated loop.

Bose's SoundLink Max (shown above on the right) was introduced in 2024 as a larger SoundLink speaker featuring an integrated handle and a distinctive premium rectangular appearance. The SoundLink products' ornamental designs—including their overall proportions, front grille presentation, rounded rectangular bodies, and clean minimalist styling—have been widely recognized by consumers and reviewers as attractive, premium, portable, and practical, with public reviews praising the SoundLink Flex and SoundLink Max for their sleek and distinctive designs. Through Bose's long-standing and continuous sale and promotion of the SoundLink products, these distinctive ornamental designs have become closely associated with Bose and serve as source-identifying trade dress.

5. Bose has protected the distinctive ornamental designs of its SoundLink products through worldwide patent protection. For example, US Design Patent No. D967,058 (the "'058 Design Patent"), filed on September 18, 2020, and issued on October 18, 2022, protects the ornamental design of Bose's SoundLink Flex. Also, US Design Patent No. D1,105,029 (the "'029 Design Patent") filed on October 20, 2023, and issued on December 9, 2025, protects the ornamental design of Bose's SoundLink Max.

6. The product designs for Bose's SoundLink Flex and SoundLink Max are also protectable as trade dress under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), because the designs consist of distinctive, non-functional features that have acquired secondary meaning. The protected trade dress in Bose's SoundLink Flex and SoundLink Max resides in the products' overall commercial impression and distinctive ornamental appearance, including their rounded rectangular speaker bodies, prominent front grille presentations, clean minimalist proportions, and premium portable-speaker styling. These features contribute to the products' recognizable Bose look and serve to identify Bose as the source of the products.

7. Seeking to trade off the goodwill that Bose has developed, as well as the unique association between the well-known SoundLink trade dress and the popular SoundLink Flex and SoundLink Max, DBsono has recently started selling portable speakers known as the DB-X (Model F35) and DB-X Blast (Model F37) that infringe Bose's design patent rights and trade dress in its SoundLink products.

| **Bose SoundLink Max** | **DBSono DB-X** |
|---|---|
|   |   |
| **Bose SoundLink Flex** | **DBSono DB-X Blast** |
|   |   |

8. Upon information and belief, DBsono intentionally markets and advertises the DB-X and DB-X Blast products to consumers seeking Bose's products. For example, as shown below, a search on Amazon for "Bose wireless speaker" and "SoundLink Max" both return a DBsono product as a prominently displayed "Sponsored" result, respectively. Upon information and belief, DBsono promotes its products through Amazon's sponsored advertising program, resulting in the

display of DBsono's products to consumers searching specifically for Bose's products, including the SoundLink Max product. By causing its products to appear in response to searches for Bose's products, DBsono seeks to divert consumers interested in Bose's products, capitalize on the substantial goodwill and consumer recognition associated with Bose's patented product designs and trade dress, and increase the likelihood that consumers will mistakenly believe that DBsono's products are associated with, sponsored by, approved by, or otherwise affiliated with Bose. This conduct demonstrates that DBsono knowingly and intentionally sought to trade on Bose's reputation, goodwill, and commercial success and is evidence of DBsono's willful infringement.






9. Bose brings this action for infringement of United States Design Patent Nos. D1,105,029 (the "'029 Design Patent") and D967,058 (the "'058 Design Patent") (collectively the "Bose Patents" or "Patents-in-Suit") arising under the Patent Laws of the United States, 35 U.S.C. § 271, based on DBsono's unauthorized commercial manufacture, use, importation, offer for sale, and/or sale of the DB-X and DB-X Blast products (collectively the "Accused Products") in the United States. Bose further brings claims against DBsono for federal trade dress infringement, unfair competition, and false designation of origin under 15 U.S.C. § 1125(a), as well as state and common law claims for unfair competition in violation of Massachusetts statutory law (Mass. Gen. L. ch. 93A §§ 2, 11) and common law.

10. DBsono's infringement has been willful and deliberate. No later than July 21, 2026, DBsono received actual notice of Bose's infringement concerns, including Bose's demand that DBsono immediately cease and desist from selling the accused DB-X and DB-X Blast products

across all retail platforms, including DBsono's website, Amazon, and Walmart. DBsono acknowledged Bose's allegations, represented that it had removed or was removing the accused products from certain channels, and repeatedly stated that it was taking further steps to address the matter. However, DBsono failed to remove all accused products from all sales channels after notice of Bose's patent rights, despite making repeated representations that corrective action was underway, which demonstrates at least reckless disregard of Bose's patent rights and supports a finding of willful infringement and enhanced damages under 35 U.S.C. § 284.

## THE PARTIES

11. Bose is a corporation organized and existing under the laws of the State of Delaware, having a place of business at 100 The Mountain Road, Framingham, Massachusetts 01701.

12. Upon information and belief, Defendant Shenzhen Hongyinyue Technology Co., Ltd. (referred to as "shenzhenshihongyineryuekejiyouxiangongsi" in FCC documents and on Amazon) and doing business as "DBsono" is a company formed under the laws of the People's Republic of China with an address of Unit 202, Entrance 1, Building 2, Jinyongge Phase II, No. 454 Jinglong Zhonghuan Road, Longyuan Community, Longhua Subdistrict, Longhua District, Shenzhen City, Guangdong, 518000, the People's Republic of China.

13. Upon information and belief, Defendant Shenzhen Hongyinyue Technology Co., Ltd. (referred to as "shenzhenshihongyineryuekejiyouxiangongsi" in FCC documents and on Amazon) has designated Hopek Corporation Inc. to accept service of process on its behalf in the United States in connection with equipment authorized by the FCC including the DB-X (FCC ID: 2BOBD-F35, Model F35) and DB-X Blast (FCC ID: 2BOBD-F37, Model F37) that are the subject of the infringement claims in this action. The physical U.S. address of the agent is 16755 Coyote

Bush Dr Unit 84, San Diego, CA 92127. The email address of the U.S. Agent is HopekPeter@gmail.com. Copies of the U.S. Agent Designations are attached as Exhibits 1-2.

## JURISDICTION AND VENUE

14. This action arises under the Patent Laws of the United States, including 35 U.S.C. § 271, and under the Lanham Act, 15 U.S.C. § 1051 et seq., including Section 43(a), 15 U.S.C. § 1125(a), for trade dress infringement, unfair competition, and related claims.

15. This Court has subject-matter jurisdiction over the federal law claims pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b), because this action arises under the patent and trademark laws of the United States. This Court has supplemental jurisdiction over any related state-law claims pursuant to 28 U.S.C. § 1367.

16. The Court has personal jurisdiction over DBsono because, upon information and belief, DBsono has committed acts of infringement within Massachusetts and this Judicial District in violation of 35 U.S.C. § 271 and transacts and solicits business within Massachusetts and this Judicial District. Upon information and belief, DBsono has purposefully availed itself of the privileges and benefits of the laws of Massachusetts, and DBsono derives benefits from conducting business within Massachusetts and this Judicial District. Upon information and belief, DBsono also derives revenue from infringing products offered for sale, sold, and/or used within this Judicial District, and should reasonably expect its actions to have consequences within this Judicial District.

17. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(c)(3). DBsono is a foreign entity organized under the laws of the People's Republic of China and, therefore, may be sued in any judicial district. In addition, upon information and belief, DBsono has offered for sale and sold the Accused Products in Massachusetts and within this Judicial District.

## THE PATENTS-IN-SUIT

18. On December 9, 2025, the United States Patent and Trademark Office ("USPTO") issued the '029 Design Patent, entitled "Portable Loudspeaker." Nathan David Schaal, Caleb Drake, and Adam A. Carr are listed as inventors on the face of the '029 Design Patent. The term of the '029 Design Patent will expire on or about December 9, 2040. A copy of the '029 Design Patent is attached hereto as Exhibit 3.

19. On October 18, 2022, the USPTO issued the '058 Design Patent, entitled "Portable Loudspeaker." David J. Fustino is listed as the inventor on the face of the '058 Design Patent. The term of the '058 Design Patent will expire on or about October 18, 2037. A copy of the '058 Design Patent is attached hereto as Exhibit 4.

20. Bose is the assignee and owner of all rights, title, and interest in and to each of the Patents-in-Suit.

21. The USPTO duly and legally issued the Patents-in-Suit, which are presumed valid.

22. Bose has continuously maintained a virtual patent marking page (https://assets.bosecreative.com/m/2e8e26abd3c8cac3/original/Bose_Patent_Marking.pdf), including the products that are covered by the '029 Design Patent and the '058 Design Patent.

## THE '029 DESIGN PATENT

23. Upon information and belief, DBsono has infringed and is infringing the design protected by the '029 Design Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing at least the DB-X 100W and DB-X 60W products (collectively the "DB-X Products"). Upon information and belief, the visual appearance of the DB-X 100W and the DB-X 60W products is the same.

24. Pictured below is FIG. 1 from the ’029 Design Patent next to an example of the DB-X Products.

| ’029 Design Patent | DB-X Products |
|---|---|
|  FIG. 1 |  |

25. DB-X Products have been sold and offered for sale on DBsono’s website (www.dbsono.com) and through Amazon and Walmart platforms, and continue to be sold and offered for sale at least on the Amazon platform. Shown below are excerpts from DBsono’s website of the infringing DB-X Products being offered for sale:






26. As recently as September 9, 2026, an order for the DB-X Product was placed through DBsono's Amazon storefront and shipped to a Massachusetts address and delivered on September 10, 2026.

27. Images and information obtained from DBsono's website, as well as a visual inspection of the DB-X 100W product, are used herein and below to show that the '029 Design Patent is infringed by the DB-X Products.

28. The DB-X Products bear a design that, in the eye of an ordinary observer, is substantially the same as the design claimed in Bose's '029 Design Patent. The illustrations below show this similarity, with representative images of the claimed design alongside representative images of a DB-X Product.

| ’029 Design Patent | DB-X Product |
| --- | --- |
|  FIG. 1 |  |
|  FIG. 2 |  |
|  FIG. 3 |  |

<table>
<tr><th>’029 Design Patent</th><th>DB-X Product</th></tr>
<tr><td>

FIG. 4</td><td></td></tr>
<tr><td>

FIG. 5</td><td></td></tr>
<tr><td>

FIG. 6</td><td></td></tr>
</table>

| ’029 Design Patent | DB-X Product |
|---|---|
| <br>FIG. 7 |  |

29. On July 21, 2026, Bose notified DBsono pursuant to 35 U.S.C. § 287 that it was infringing Bose’s ’029 Design Patent by making, using, selling, offering for sale, and/or importing the DB-X Products and any other loudspeakers that bear a substantially similar design. Bose demanded that DBsono immediately stop infringing.

30. DBsono continues to infringe Bose’s ’029 Design Patent by making, using, selling, offering for sale, and/or importing infringing loudspeakers into this District and elsewhere in the United States without the consent or authorization of Bose.

31. Upon information and belief, DBsono has promoted and sold its infringing loudspeakers throughout the United States, including in Massachusetts, through its e-commerce website at dbsono.com, as well as through Amazon and Walmart retailers.

**THE ’058 DESIGN PATENT**

32. Upon information and belief, DBsono has infringed and is infringing the design protected by the ’058 Design Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing at least the DB-X Blast Product.

33. Pictured below is FIG. 1 from the ’058 Design Patent next to an example of the DB-X Blast Product.

| ’058 Design Patent | DB-X Blast Product |
| --- | --- |
|  FIG. 1 |  |

34. DB-X Blast Products have been sold and offered for sale on DBsono’s website (www.dbsono.com) and through the Amazon and Walmart platforms. Below is an excerpt from DBsono’s website of the infringing DB-X Blast Product being offered for sale:




35. Images and information obtained from the above identified webpage, as well as a visual inspection of the DB-X Blast Product, are used herein and below to show that the ’058 Design Patent is infringed by the DB-X Blast Product.

36. The DB-X Blast Product bears a design that, in the eye of an ordinary observer, is substantially the same as the design claimed in Bose’s ’058 Design Patent. The illustrations below show this similarity, with representative images of the claimed design alongside representative images of a DB-X Blast Product.

| ’058 Design Patent | DB-X Blast Product |
|---|---|
| Elongated, pill-shaped body having similar thickness-to-height ratio | |
|  |  |
| Uniform, circular speaker grille on rear surface | |
|  FIG. 2 |  |
| Similarly sized space separating speaker grille from top perimeter | |
|  FIG. 3 |  |

| ’058 Design Patent | DB-X Blast Product |
| --- | --- |
| Uniform, circular speaker grille on rear surface<br><br>FIG. 4 |  |
| <br>FIG. 5<br>Convex front and rear surfaces with substantially planar side surface |  |
| Angled side profile with rounded taper from back to front<br><br>FIG. 6 |  |

| ’058 Design Patent | DB-X Blast Product |
|---|---|
| Segmentation of rear, top, and front surfaces<br><br>FIG. 7<br>Similar height to width size ratio of top surface |  |
| Similar height to width size ratio of bottom surface<br><br>FIG. 8 |  |

37. On July 21, 2026, Bose notified DBsono pursuant to 35 U.S.C. § 287 that it was infringing Bose’s ’058 Design Patent by making, using, selling, offering for sale, and/or importing the DB-X Blast Product and any other loudspeakers that bear a substantially similar design. Bose demanded that DBsono immediately stop infringing.

38. DBsono continues to infringe Bose’s ’058 Design Patent by making, using, selling, offering for sale, and/or importing the DB-X Blast Product into this District and elsewhere in the United States without the consent or authorization of Bose.

39. Upon information and belief, DBsono promotes and sells its infringing loudspeakers throughout the United States, including in Massachusetts, through its e-commerce website at dbsono.com, as well as through Amazon and Walmart retailers.

**THE SOUNDLINK FLEX TRADE DRESS**

40. Since its founding in 1964, Bose has expended considerable time and effort developing premium sound experiences that have forever changed the way people listen to music and beyond. As a result of Bose's efforts, Bose has established a reputation as an industry leader in sound. To that end, in 2021 and 2024, Bose released its SoundLink Flex and SoundLink Max products, respectively.

41. Since at least as early as October 2021, when Bose released the first commercial version of the SoundLink Flex, the SoundLink products have borne distinctive features designed to differentiate it from competitor products.

42. Specifically, the overall appearance of the SoundLink Flex includes at least the following features, the combination of which create a non-functional and distinctive trade dress: an elongated, pill-shaped body having convex front and rear surfaces and rounded corners; a blank space separating the top perimeter from a continuous front speaker grille on a front surface; an elongated speaker grille on a back surface; an elongated silhouette that is wider than it is tall; and a fabric carrying loop projecting from one side; an example of which is provided below:




43. Since 2021, Bose has continuously used the SoundLink Flex trade dress with the intention of creating a recognizable, iconic, unique form factor that consumers can readily identify as a product that is solely available from Bose.

44. The Bose SoundLink Flex trade dress is non-functional. The design features embodied by the SoundLink Flex trade dress are not essential to the function of the loudspeaker, do not make the device cheaper or easier to manufacture, and do not affect the quality of the device. The design embodied by the SoundLink Flex trade dress is not a competitive necessity, as there are numerous other designs available that are equally feasible and efficient, none of which necessitate copying or imitating the Bose SoundLink Flex trade dress. Indeed, there are many portable loudspeakers that do not feature the Bose SoundLink Flex trade dress; representative examples are shown below (offered by Sony, JBL, and Anker, respectively).




45. The features of the Bose SoundLink Flex trade dress serve to render the product as originating solely from Bose.

46. The Bose SoundLink Flex has been commercially successful and has received unsolicited media coverage. For instance, the SoundLink Flex was recognized as the best mini Bluetooth speaker of 2026 by CNET, calling it "one of the best mini Bluetooth speakers" due in part to its multi-positional design and automatic sound optimization.[1]

47. Bose also promotes the Bose SoundLink Flex in connection with the Bose SoundLink Flex trade dress throughout the United States through partnerships with well-known individuals. For example, Bose has partnered with celebrities such as K-pop icon Lisa:

[1] https://www.cnet.com/tech/home-entertainment/best-bluetooth-speaker/




**THE SOUNDLINK MAX TRADE DRESS**

48. Since at least as early as May 2024, when Bose released the first commercial version of the SoundLink Max, the SoundLink Max has borne distinctive features designed to differentiate it from competitor products.

49. Specifically, the overall appearance of the SoundLink Max includes at least the following features, the combination of which create a non-functional and distinctive trade dress: an oblong body having convex front and rear surfaces and rounded corners; a blank space separating the top perimeter from a continuous front speaker grille; a rectangular speaker grille on each of the side surfaces; and a silicone handle connected to the top surface by two lengths of fabric that are fed into the handle on either side; an example of which is provided below:



50. Since 2024, Bose has continuously used the SoundLink Max trade dress with the intention of creating a recognizable, iconic, unique form factor that consumers can readily identify as a product that is solely available from Bose.

51. The Bose SoundLink Max trade dress is non-functional. The design features embodied by the SoundLink Max trade dress are not essential to the function of the loudspeaker, do not make the device cheaper or easier to manufacture, and do not affect the quality of the device. The design embodied by the SoundLink Max trade dress is not a competitive necessity, as there are numerous other designs available that are equally feasible and efficient, none of which necessitate copying or imitating the Bose SoundLink Max trade dress. Indeed, there are many portable loudspeakers that do not feature the Bose SoundLink Max trade dress; representative examples are shown below (offered by JBL, Marshall, and harman/kardon, respectively).







52. The features of the Bose SoundLink Max trade dress serve to render the product as originating solely from Bose.

53. The Bose SoundLink Max has been commercially successful and has received unsolicited media coverage. For instance, the Bose SoundLink Max was recognized as the 'Best Portable Party Speaker' in May of 2026 by Tech Gear Lab[2] and was the recipient of a Red Dot Design Award in 2025 due in part to its "robust design, [] pleasant feel, and [] precise finish."[3]

---

[2] https://www.techgearlab.com/reviews/audio/bluetooth-speaker/bose-soundlink-max
[3] https://www.red-dot.org/project/bose-soundlink-max-portable-speaker-81821

54. Bose also promotes the Bose SoundLink Max in connection with the Bose SoundLink Max trade dress throughout the United States through partnerships with well-known individuals. For example, Bose has partnered with celebrities such as global DJ John Summit:




**BOSE SOUNDLINK TRADE DRESS INFRINGEMENT**

55. As a result of long and substantial use, sales, advertising, and third-party recognition, the Bose SoundLink Max and SoundLink Flex trade dresses (the "Bose Trade Dresses") have become widely and instantly recognizable for their unique designs and are associated with Bose as their one source. Not only has the public come to recognize and identify the products bearing the Bose Trade Dresses as emanating from Bose, but also the public recognizes that products bearing the Bose Trade Dresses constitute high-quality products that conform to the specifications created by Bose. This demonstrates how the Bose Trade Dresses each have established strong secondary meaning and extensive goodwill.

56. DBsono attempts to capitalize on the Bose Trade Dresses by offering statements on its website comparing the DB-X Product to a "flagship" brand, with a distinctive Bose SoundLink Max silhouette in the background, reproduced below.







57. Furthermore, the substantial similarity between the Accused Products' appearance and the distinctive Bose Trade Dresses has resulted in consumers perceiving the products as being the same or related. Indeed, customer reviews and public comments concerning the Accused Products expressly demonstrate such confusion, with consumers repeatedly stating that the Accused Products look "very similar" and are a "dupe" for the Bose SoundLink Max and SoundLink Flex products, respectively. Representative examples of these consumer statements are set forth below. These statements further demonstrate that the Bose Trade Dresses have acquired secondary meaning because consumers recognize the distinctive visual appearance of the products as identifying Bose as its source. Significantly, consumers who encounter the Accused Products immediately identify the respective Bose product that DBsono is attempting to imitate, reflecting that the relevant consuming public associates the respective trade dress with Bose rather than merely viewing it as a functional or generic product design.

UB

★★★★★ **Dbsono Doesn't disappoint!**

Reviewed in the United States on May 23, 2026

Verified Purchase

Much like the dbsono 100W version, this one packs a punch. It looks similar to the Bose SoundLink Flex and sounds, just as good. And at the current price of $30, you will not be disappointed. I purchased a few of the dbsono 100W versions because it is a fantastic speaker and will blow you away. At peak, I didn't hear any distortion. The speaker is solidly built. This 35W version is just as awesome as the 100W version and is comes in several different colorways. Get this now - you will not be disappointed! I am hoarding them for Christmas. Oh yeah, you can get it at Walmart currently for $79.

3 people found this helpful

Helpful | Report

C & J

★★★★★ **Great speaker and a super value**

Reviewed in the United States on April 4, 2026

Verified Purchase

I searched extensively for a BT speaker with bigger sound than a JBL Charge 6, but felt a JBL Xtreme or Tribit Lava was too large. I am quite pleased to find the dbsono DB-X F35. I have a picture comparing size next to a JBL Charge 6. The dbsono is a good compromise to meet my sound vs portability needs. Of course your considerations may weight differently.

The speaker has a nice appearance and provides a compact footprint having a comfortable silicone rubber covered rope handle -- very similar to the Bose Soundlink Max. With the "ex-bass" option on, bass extends into the 50's Hz without scooping of the upper bass without excessive passive radiator resonance at the low end. The unit weighs 4.2lbs and I'm guessing the woofer magnets are substantial. A single tweeter eliminates potential multi-driver interference at higher frequencies. The DB-X speaker has substantial sound power for its package size with a good overall sound quality. EQ'ing needs a 3rd party app although I find the sound well balanced without. I wish there was a way to adjust the rather weird off/on/connect sounds. The LED light bar has 6 modes, including off. A USB-C connection on the back under a rubber cover provides charging or a direct wired audio that works with my Android phone (Pixel 9). The battery charge level is announced at turn on. I wish there was a visual charge indicator as I like to limit the charge % on the Li-ion battery. The speaker shuts off automatically after apprx 15 minutes of no audio input, with an audible signal. High bass level seems to draw down the battery pretty fast and perhaps there is a capacity limitation with battery space is available. But charging is quick and the speaker works while charging - I have no issue here with capacity with my usage of the speaker.

Martin

★★★★☆ **Very Good for the Price but Definitely Not Bose Sound Quality**

Reviewed in the United States on May 22, 2026

Verified Purchase

I'm giving 4 stars mainly because of the price to sound ratio. I bought 2 on a super sale @ $60 each in order to have a makeshift stereo system in my bedroom. However, I am on the fence on returning.
I am a Bose guy and familiar with the SoundMax Pro which this brand/model is a sold dupe for.

Corey G.

★★★★★ **Worth the Money**

Reviewed in the United States on April 17, 2026

Verified Purchase

Really impressed with this little speaker. Hard to beat for the money. The sound quality and base is surprisingly good. Volume is quite good considering the size and portability of the speaker.

I saw a bose speaker that looks the same but more than 3x the cost. I have a few bose products. Can't imagine the sound quality of the bose speaker similar to this one would be much better if at all?

I ended buying 2 as gifts and one for myself. Definately worth checking out.

3 people found this helpful

Helpful | Report

UB

★★★★★ **Bose-like Sound**

Reviewed in the United States on March 16, 2026

**Verified Purchase**

This speaker was made to look like the Bose Soundlink Max which to me is a great look. I was absolutely blown away by the sound quality of the dbsono portable Bluetooth speaker, 4x less than the price of the Bose Soundlink Max. Nice quality and very loud. You will not be disappointed.

3 people found this helpful

Helpful | Report

---

Ms. Gordon

★★★★★ **Great sound, but battery life is lacking!**

Reviewed in the United States on April 14, 2026



Although I'm giving this five stars, I do have some criticisms. I bought this because my birthday was coming up, and I wanted the name brand version of it, but that price went up $100 to $399. I was saving up for a trip, so I couldn't afford the name brand speaker. I chose this speaker because they said it was very similar to the flagship version. This is literally the best speaker I've ever purchased!

The sound quality is amazing. The only thing is that I like to play my music very loud at top level and with the extra bass. Therein lies the issue. I've tested it multiple times now, and I get as little as one hour of music at top sound level with extra bass, even if the lights are off on the system.

It's heavy, it sounds great, there are no distortions that I've heard, but the battery life is almost laughable. It cuts off at 20% every time I use it. Even if I turn it back on and play another song or two at the same volume and bass level, it cuts off again. When I turn it on repeatedly for about 20 minutes, it still kept saying it was at 20% battery.

---

Julie

★★★★★ **Don't buy Bose, get this. Looks identical.**

Reviewed in the United States on May 25, 2026

**Verified Purchase**

Very cute, and it works well! Don't buy Bose when you can get this for 1/3 - 1/4 the price. It's very heavy for the size. Perfect loudness. Easy to use. Love the pink color.

Helpful | Report

---

**RaZkOL95** • 3mo ago

Wow it's such a blatant copy too. Wonder how many they actually sell of these

1

**https://www.reddit.com/r/Bluetooth_Speakers/comments/1snwn9w/dbsono/**




**https://www.youtube.com/watch?v=pdWcIOP-FwU**




**https://www.youtube.com/watch?v=pdWcIOP-FwU**




**https://www.youtube.com/watch?v=7n8mFF2bOto**

58. The above statements constitute compelling evidence that consumers recognize the similarity between the Bose and DBsono products and are likely to be confused regarding their source, origin, affiliation, and/or sponsorship, thereby causing injury to Bose and its valuable goodwill associated with its trade dresses.

**<u>COUNT I</u>**
**(INFRINGEMENT OF '029 DESIGN PATENT)**

59. Bose restates and realleges the allegations set forth in paragraphs 1 through 58 above and incorporates them herein by reference.

60. DBsono, without authorization from Bose, has made, used, offered for sale, sold, and/or imported in or into the United States, and continues to make, use, offer for sale, sell, and/or import in or into the United States, loudspeakers having designs that infringe the '029 Design Patent, including at least the DB-X Products, and any other loudspeaker bearing a substantially similar design.

61. DBsono's infringement has been willful, intentional, and deliberate, at least as of the date Bose provided DBsono with notice of infringement. DBsono knew or should have known that continuing to make, use, offer for sale, sell, and/or import its infringing loudspeakers into the United States would directly infringe the '029 Design Patent.

62. Bose has been and will continue to be irreparably harmed by DBsono's infringement of the '029 Design Patent.

63. Bose has no adequate remedy at law for DBsono's infringement of the '029 Design Patent.

64. DBsono's infringement of the '029 Design Patent will continue unless enjoined by this Court.

**COUNT II**
**(INFRINGEMENT OF '058 DESIGN PATENT)**

65. Bose restates and realleges the allegations set forth in paragraphs 1 through 64 above and incorporates them herein by reference.

66. DBsono, without authorization from Bose, has made, used, offered for sale, sold, and/or imported in or into the United States, and continues to make, use, offer for sale, sell, and/or import in or into the United States, loudspeakers having designs that infringe the '058 Design Patent, including at least the DB-X Blast Product, and any other loudspeaker bearing a substantially similar design.

67. DBsono's infringement has been willful, intentional, and deliberate, at least as of the date Bose provided DBsono with notice of infringement. DBsono knew or should have known that continuing to make, use, offer for sale, sell, and/or import its infringing loudspeakers into the United States would directly infringe the '058 Design Patent.

68. Bose has been and will continue to be irreparably harmed by DBsono's infringement of the '058 Design Patent.

69. Bose has no adequate remedy at law for DBsono's infringement of the '058 Design Patent.

70. DBsono's infringement of the '058 Design Patent will continue unless enjoined by this Court.

**COUNT III**
**(FEDERAL TRADE DRESS INFRINGEMENT)**

71. Bose restates and realleges the allegations set forth in paragraphs 1 through 70 above and incorporates them herein by reference.

72. The Bose Trade Dresses are non-functional and distinctive based on, among other things, extensive nationwide use, promotion, marketplace success, and recognition, and were so before DBsono first sold, offered for sale, distributed, advertised, or promoted the Accused Products.

73. DBsono's use of the Bose Trade Dresses is without permission or authorization from Bose and in willful disregard of the rights of Bose to control its intellectual property.

74. DBsono's unauthorized use of the Bose Trade Dresses, as described above, has caused and is likely to cause confusion, mistake, or deception, and is likely to cause and has likely caused consumers to believe the Accused Products are produced, sponsored, authorized, or licensed by or are otherwise affiliated with or connected to Bose.

75. DBsono's unauthorized use of the Bose Trade Dresses has harmed and will result in future harm to the reputation of Bose and its goodwill in its Bose Trade Dresses in the marketplace.

76. DBsono's acts are willful, wanton, reckless, and intended to cause confusion to the public and injure Bose.

77. As a direct and proximate result of the foregoing acts, Bose has suffered and will continue to suffer significant injuries in an amount to be determined at trial.

78. Bose is entitled to recover all damages, including attorneys' fees, that it has sustained and will sustain, and all gains, profits, and advantages obtained by DBsono as a result of its infringing acts.

79. There is no adequate remedy at law that can fully compensate Bose for the harm caused by DBsono's infringement, which is ongoing. Accordingly, Bose is entitled to injunctive relief prohibiting DBsono from continuing to infringe the Bose Trade Dresses or any designs confusingly similar thereto.

## COUNT IV
## (FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN)

80. Bose restates and realleges the allegations set forth in paragraphs 1 through 79 above and incorporates them herein by reference.

81. DBsono's use of the Bose Trade Dresses without consent or authorization from Bose constitutes false designation of origin, which has caused and is likely to cause confusion or to cause mistake, or to deceive as to the affiliation, connection, or association of DBsono with Bose, or as to the origin, sponsorship, or approval of DBsono's goods or commercial activities by Bose, in violation of 15 U.S.C. § 1125(a).

82. DBsono acted unfairly and deceptively against Bose by infringing intellectual property rights of Bose, including its trade dresses in the SoundLink Max and SoundLink Flex products, with the Accused Products and using the Accused Products to compete improperly with Bose.

83. Such conduct by DBsono is likely to confuse, mislead, and deceive DBsono's customers, purchasers, and members of the public as to the origin of DBsono's product and/or the origin of the Bose Trade Dresses and cause said persons to mistakenly believe that DBsono and/or its products have been sponsored, approved, authorized, or licensed by Bose or are in some way affiliated or connected with Bose, all in violation of 15 U.S.C. §1125, and constitutes false designation of origin and unfair competition with Bose.

84. DBsono's actions were undertaken willfully with full knowledge of the falsity of such designation of origin and unfair competition.

85. Bose is informed and believes, and thereon alleges, that DBsono has derived and received, and will continue to derive and receive, gains, profits, and advantages from DBsono's false designation of origin and unfair competition in an amount that is not presently known to Bose. By reason of DBsono's actions constituting false designation of origin, false or misleading statements, false or misleading descriptions of fact, false or misleading representation of fact, and unfair competition, Bose has been damaged and is entitled to monetary relief in an amount to be determined at trial.

86. Due to DBsono's actions, Bose has suffered and continues to suffer great and irreparable injury for which Bose has no adequate remedy at law, and Bose is entitled to injunctive relief.

## COUNT V
## (MASSACHUSETTS UNFAIR AND DECEPTIVE TRADE PRACTICES)

87. Bose restates and realleges the allegations set forth in paragraphs 1 through 86 above and incorporates them herein by reference.

88. DBsono's appropriation, adoption, and use of the Bose Trade Dresses with respect to its DB-X and DB-X Blast products, respectively, has and is likely to continue to confuse or

mislead consumers into believing that DBsono's goods are authorized, licensed, affiliated, sponsored, and/or approved by Bose.

89. The actions of DBsono, as described above, constitute unfair and deceptive business practices within the meaning of Mass. Gen. Laws ch. 93A.

90. At all times relevant to this action, DBsono has been engaged in trade or commerce within the meaning of Mass. Gen. Laws ch. 93A.

91. DBsono's unfair and deceptive acts took place primarily and substantially in Massachusetts. Bose is headquartered in Massachusetts, has suffered financial harm in Massachusetts, designed the SoundLink Max and SoundLink Flex in Massachusetts, and has confirmed a purchase of the infringing DB-X Product in Massachusetts.

92. DBsono acted unfairly and deceptively by infringing intellectual property rights of Bose, including the Patents-in-Suit and the Bose Trade Dresses, and using the DB-X and DB-X Blast Products to compete improperly with Bose through various online storefronts.

93. The deceptive, unfair, and fraudulent practices set forth herein have been undertaken with knowledge by DBsono willfully with the intention of causing harm to Bose and for the calculated purpose of misappropriating the goodwill and business reputation of Bose.

94. DBsono's acts have caused and will continue to cause irreparable injury to Bose, including harm to the business, reputation, and goodwill of Bose. Bose has no adequate remedy at law to compensate it fully for the damages it has caused, and which will continue to be caused, by DBsono's unlawful acts, unless it is enjoined by this Court.

95. In addition, as a result of DBsono's unfair and deceptive acts, Bose has suffered and will continue to suffer monetary damages.

96. As a result of DBsono's conduct in violation of Chapter 93A, as described herein, Bose is entitled to recover actual damages in an amount to be proven at trial, such amount to be doubled or trebled, injunctive relief, and attorneys' fees and costs pursuant to Mass. Gen. Laws ch. 93A.

**COUNT VI**
**(COMMON LAW UNFAIR COMPETITION)**

97. Bose restates and realleges the allegations set forth in paragraphs 1 through 96 above and incorporates them herein by reference.

98. DBsono acted unfairly and deceptively by infringing intellectual property rights of Bose, including infringement of the Patents-in-Suit, as well as the Bose Trade Dresses, and using the Accused Products to compete improperly with Bose.

99. By violating intellectual property rights of Bose, DBsono has engaged in unfair competition.

100. Bose has suffered irreparable harm and, absent immediate injunctive relief, will continue to suffer irreparable harm as a result of DBsono's actions. Such harm includes, but is not limited to, the loss of the right of Bose to compete fairly in the marketplace and the diversion of sales from Bose to DBsono and a lessening of the goodwill associated with Bose, which would not have occurred but for DBsono's unfair competition.

**PRAYER FOR RELIEF**

WHEREFORE, Bose prays for the following judgments and relief:

A. A judgment and order that DBsono has infringed the Patents-in-Suit by making, using, offering to sell, selling, and/or importing infringing loudspeakers into the United States;

B. A judgment and order permanently enjoining DBsono and its affiliates, officers, agents, employees, attorneys, and all other persons acting in concert with DBsono, from infringing the Patents-in-Suit;

C. A judgment and order requiring DBsono to pay Bose damages adequate to compensate Bose for DBsono's infringement of the Patents-in-Suit pursuant to 35 U.S.C. § 284, or the total profit made by DBsono from its infringements of the Patents-in-Suit pursuant to 35 U.S.C. § 289;

D. A judgment and order requiring DBsono to pay Bose supplemental damages or profits for any continuing post-verdict infringement up until entry of the final judgment, with an accounting, as needed;

E. A judgment and order requiring DBsono to pay Bose increased damages up to three times the amount found or assessed pursuant to 35 U.S.C. § 284, including at least for DBsono's willful infringement;

F. A judgment and order requiring DBsono to pay Bose pre-judgment and post-judgment interest on any damages or profits awarded;

G. A determination that this case is exceptional under 35 U.S.C. § 285;

H. An award of Bose's reasonable attorneys' fees, costs, and expenses incurred in this action under 35 U.S.C. § 285, any other federal statute, or common law;

I. An award, judgment, and order in favor of Bose and against DBsono on the claim of trade dress infringement under 15 U.S.C. § 1125(a) that DBsono has infringed the Bose Trade Dresses;

J. An award, judgment, and order in favor of Bose and against DBsono on the claim of false designation of origin and unfair competition under 15 U.S.C. § 1125;

K. An award, judgment, and order in favor of Bose and against DBsono on the claim of unfair competition under Chapter 93A;

L. An award, judgment, and order in favor of Bose and against DBsono on the claim of common law unfair competition;

M. A judgment and order that DBsono and its affiliates, officers, agents, employees, attorneys, and all other persons acting in concert with DBsono, be temporarily, preliminarily, and permanently enjoined and restrained from further acts of infringement of the Bose Trade Dresses, including:

1. using the Bose Trade Dresses or any design features that are confusingly similar thereto;

2. offering, promoting, or selling the Accused Products and/or any product that uses the Bose Trade Dresses and/or anything confusingly similar thereto;

3. unfairly competing with Bose in any manner whatsoever; and

4. causing a likelihood of confusion or injuries to the business reputation of Bose; and

N. An award of such other and further relief in law or in equity as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

In accordance with Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the United States Constitution, Bose hereby demands a jury trial on all issues triable before a jury.

Dated: September 15, 2026

Respectfully submitted,

*<u>/s/ Jeremy P. Oczek</u>*
Jeremy P. Oczek, Esq. (BBO # 647509)
BOND, SCHOENECK & KING, PLLC
200 Delaware Avenue
Buffalo, New York 14202
Telephone: (716) 416-7037
Email: jpoczek@bsk.com

Mark L. Beloborodov, Esq. (BBO # 648645)
BOND, SCHOENECK & KING, PLLC
10 Post Office Square, 8th Floor
Boston, MA 02109
Telephone: (617) 865-9070
Email: mbeloborodov@bsk.com

COUNSEL FOR PLAINTIFF
BOSE CORPORATION